UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE

**Bryan B. Nadeau**

    **v.**                                               Case No. 07-cv-203-PB
                                                   Opinion No. 2008 DNH 069
**Michael J. Astrue, Commissioner,**
**Social Security Administration**


                          **MEMORANDUM AND ORDER**

    Robert Nadeau moves to reverse the Commissioner of Social Security's determination that he is not eligible for disability insurance benefits ("DIB").  Nadeau argues that the Administrative Law Judge ("ALJ") erred at steps two and four of the five-step evaluation process set forth in 20 C.F.R. § 404.1520.  For the reasons set forth below, I conclude that reversal is not justified.


                           I.   **BACKGROUND**[1]

**A.   Administrative Proceedings and Nadeau's Prior Work History**

    Nadeau filed an application for disability insurance

---

[1] The background information is drawn from the Joint Statement of Material Facts (Doc. No. 10) submitted by the parties.  Citations to the Administrative Record Transcript are indicated by "Tr."

benefits ("DIB") on February 3, 2004, alleging disabilities based on fibromyalgia and depression beginning October 2, 2001.  Tr. at 59-62.  After Nadeau's claim was denied, he timely requested a hearing, which was held before Administrative Law Judge ("ALJ") James J. D'Alessandro on August 16, 2006.  At the hearing, Nadeau was represented by counsel and testified on his own behalf.  Tr. at 514-35.  On December 28, 2006, the ALJ denied Nadeau's claim.  Subsequently, the Appeals Council denied Nadeau's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. at 7-10.

**B.   Nadeau's Physical Impairments**

I describe Nadeau's physical impairments only briefly because the Commissioner agrees that Nadeau was indeed suffering from fibromyalgia.  The administrative transcript contains records of diagnoses by various doctors of Nadeau's physical impairments from 2001 to 2004.  Throughout this period, Dr. Gary M. Shapiro treated Nadeau for chronic pain, but he remained uncertain as to the root cause of the pain.  Tr. at 107-08, 134, 138, 183, 236, 255.  Dr. Richard Levy diagnosed Nadeau as suffering from fibromyalgia.  Tr. at 169-70.  Dr. Greg Rothman attributed Nadeau's weakness to low blood pressure.  Tr. at 179-

80.  Dr. Theodore Ruel concluded that there were no apparent neurological underpinnings to his pain.  Tr. at 181-82.  Dr. Clay Block evaluated Nadeau for possible hypokalemia (low potassium concentration in the blood) and found that, although Nadeau's symptoms were disabling, it was not clear that hypokalemia was the cause.  Tr. at 147-51.  Dr. Bryan Stone ruled out the possibility that Nadeau's symptoms were due to an allergic reaction.  Tr. at 225.

**C.   Nadeau's Mental Impairments**

The administrative transcript contains records of Dr. Thomas Stearns's diagnoses of Nadeau's mental impairments from 1999 to 2006.  In a consultation note dated September 30, 1999, Dr. Stearns diagnosed Nadeau with dysthymia, but noted a prior diagnosis of major depression by another doctor.  Tr. at 480.  In subsequent consultation notes from September 12, 2000, to October 17, 2001, Dr. Stearns often noted "an element of" or "undercurrent" of depression, but also noted periods in which Nadeau was "a little bit more upbeat and mobilized."  Tr. at 124, 128, 131, 135, 492.  In these consultation notes, Dr. Stearns drew no conclusions regarding how these elements or undercurrents of depression may have affected Nadeau's ability to work.

Dr. Stearns performed a psychological assessment of Nadeau in December 2004, six months after his date last insured, which Dr. Stearns memorialized in a letter the following October. Tr. at 312-13, 385-86. In the letter, Dr. Stearns noted that although the assessment was not a "comprehensive psychological evaluation," Nadeau's Minnesota Multiphasic Personality Inventory ("MMPI") responses were consistent with a somatoform disorder, and he has "at least episodically experienced depression for some time." Tr. at 386.

In a medical source statement dated August 14, 2006, Dr. Stearns opined that Nadeau's psychological state either markedly limited or effectively precluded his ability to attend and concentrate, perform activities within a schedule, and complete a normal workday/week without interruption. Tr. at 387-88. This is the first point in the record at which Dr. Stearns linked Nadeau's psychological state to a significant degree of limitation in his work activities.

The administrative transcript contains records of a one-time psychological evaluation by Dr. Richard Toye on September 20, 2004. After testing and examination, Dr. Toye opined that Nadeau was able to understand, remember, and follow complex

instructions; communicate effectively; concentrate on and complete tasks, subject to limits imposed by his pain symptoms; attend work and follow a routine at work within the limits of his physical condition; make work-related decisions; and work with the general public. Tr. at 272-74.

The administrative transcript also contains records of a medical record review by Dr. Nicholas Kalfas, a state agency medical consultant. Although Dr. Kalfas neglected to include any discussion or analysis on the form, he concluded that the evidence did not support the finding of any medically determinable mental impairment during the relevant time period. Tr. at 275-86.

## D. **ALJ's Decision**

In his decision of December 28, 2006, the ALJ conducted the five-step evaluation process set forth in 20 C.F.R. § 404.1520. Tr. at 17-22.[2] The ALJ found that Nadeau's date last insured for

---

[2] When determining whether a claimant is disabled, the ALJ is required to make the following five inquiries: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520.

DIB purposes was June 30, 2003.  Tr. at 21.  Under the first step, the ALJ found that Nadeau had not engaged in substantial gainful activity ("SGA") since October 2, 2001.  Tr. at 18. Under the second step, the ALJ found that although Nadeau's depression was not a "severe" impairment standing alone, Nadeau's fibromyalgia was severe within the meaning of the Act.  Tr. at 19.  Under the third step, the ALJ found that Nadeau's fibromyalgia did not meet or equal the severity of any listed impairment.  Tr. at 19.  Under the fourth step, the ALJ found that Nadeau retained the residual functional capacity ("RFC") to:

> occasionally lift 20 pounds, frequently lift 10 pounds, to stand and walk for 6 hours out of an 8 hour workday, and to sit for about 6 hours out of an 8 hour workday. The claimant also has postural limitations and may only occasionally balance, climb, stoop, crouch and crawl.
> Tr. at 20.

Thus, the ALJ concluded, Nadeau's impairments did not prevent him from returning to his past relevant work as an employment specialist.  Tr. at 21.  Accordingly, the ALJ determined that Nadeau did not suffer from a "disability" prior to June 30, 2003, or at any time through the date of the decision.  Tr. at 22.

## II. **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), I am authorized to review the pleadings submitted by the parties and the transcript of the administrative record and enter a judgment affirming, modifying, or reversing the decision of the ALJ.  My review is limited to determining whether the ALJ used the proper legal standards and found facts based upon the proper quantum of evidence.  Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000); Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

The ALJ's findings of fact are accorded deference as long as they are supported by substantial evidence.  Ward, 211 F.3d at 655.  Substantial evidence to support the ALJ's factual findings exist "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion."  Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  If the substantial evidence standard is met, the ALJ's factual findings are conclusive even if the record "arguably could support a different conclusion."  Id. at 770.  The ALJ's findings are not conclusive, however, if they are derived by "ignoring evidence,

misapplying the law, or judging matters entrusted to experts."
Nguyen, 172 F.3d at 35.

The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence in the record. Ortiz, 955 F.2d at 769. It is the role of the ALJ, not the role of this court, to resolve conflicts in the evidence. Id.

### III.  ANALYSIS

#### A.  ALJ's Step Two Discussion of Depression

Nadeau first alleges that the ALJ's step two finding that Nadeau's depression was not a severe impairment was erroneous because this finding is not supported by substantial evidence. He makes two related arguments regarding this point.

Nadeau first argues that the ALJ relied too heavily on the analyses of Drs. Toye and Kalfas, and not enough on the analyses of Dr. Stearns.[3]  It is true that the ALJ appeared to attach

---

[3] Nadeau argues that the ALJ inappropriately "made no reference whatsoever to Dr. Stearns's assessment." In fact, although the ALJ did not describe Dr. Stearns's entire course of treatment, he did reference Dr. Stearns's October 2001 exam as part of the step two analysis. Tr. at 19. The ALJ made no reference to Dr. Stearns's August 2006 medical source statement, but that decision was reasonable because Dr. Stearns's August 2006 statement was drafted well after Nadeau's date last insured

-8-

greater weight to the analyses of Drs. Toye and Kalfas than that of Dr. Stearns.  However, it is the ALJ, not this court, who makes credibility judgments and resolves conflicts in the evidence.  Ortiz, 955 F.2d at 769.  As long as the ALJ's ultimate conclusions are supported by substantial evidence, it is not my role to second-guess his decision.  Ward, 211 F.3d at 655.  In this case, Dr. Toye examined Nadeau and drew a reasoned conclusion that Nadeau's mental impairments were not disabling. Tr. at 272-74.  Dr. Kalfas's medical record review, though conclusory, reached the same result.  Tr. at 275.  Dr. Stearns's diagnoses all suggested some signs of depression, but he characterized this depression as episodic, often appearing as an "undercurrent" or "element" of depression rather than overt depression.  Tr. at 124, 128, 131, 135, 385-86, 492.  Indeed, with the lone exception of his August 2006 statement, Dr. Stearns did not opine that Nadeau's depression had any tangible effects.

---

and did not clearly link its findings to the relevant time period, see 42 U.S.C. § 423(a)(1)(A), and even if it did refer to the relevant time period, Dr. Stearns's August 2006 statement was not entitled to controlling weight.  See Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991) ("The ALJ was not required to accept the conclusions of claimant's treating physicians on the ultimate issue of disability.").

Thus, the ALJ had a substantial basis for concluding that Nadeau's depression did not constitute a severe impairment, and I must defer to his determination.

Nadeau also argues that because the ALJ did not explicitly make findings on the five-point degree of limitations scale described in 20 C.F.R. § 404.1520a (none, mild, moderate, marked, or extreme) during his step two analysis, this court must remand the case to the ALJ for further proceedings.  This argument is without merit.  The relevant language from the ALJ's decision recites the various diagnoses tending to show that the depression was not a severe impairment -- including Dr. Toye's characterization of Nadeau's depression as "mild" -- and then states, "I therefore find that this impairment did not significantly limit his physical or mental ability to perform basic work related activities prior to his date of last insured and was therefore not 'severe.'"  Thus, even though the ALJ did not explicitly make findings on the five-point scale, he implicitly found, based on sufficient evidence in the record, that any limitations imposed by Nadeau's depression were mild. Moreover, as discussed further below, even if both his mental and physical impairments were severe, Nadeau would nevertheless have

-10-

been denied benefits under the step four analysis. For both of these reasons, then, remand is not justified because it would "amount to no more than an empty exercise" that would not change the final result. See Ward, 211 F.3d at 656.

## B. ALJ's Step Four Discussion of Nadeau's Employment Specialist Position

Nadeau next alleges that the ALJ's step four analysis was erroneous because there were insufficient facts to support the ALJ conclusion that Nadeau's employment specialist position was performed at a level consistent with substantial gainful activity ("SGA").

Nadeau first argues that the ALJ's decision was not adequately justified because the ALJ never determined whether Nadeau earned enough in the employment specialist position for it to qualify as SGA. This doubt arose because Nadeau, who was represented by counsel at the hearing, provided the ALJ with contradictory information regarding the salary and duration of the employment specialist job. In one form, he stated that the job was performed from 1992 to 1993, at a rate of $360/week. Tr. at 77. In another form, he stated that the job was performed from November 1994 to April 1995, at a rate of $11/hour. Tr. at

86, 89.  Meanwhile, his lifetime earnings summary is consistent with neither form.  Tr. at 63-64.  Nadeau never raised these discrepancies as an issue before the ALJ, and the ALJ did not inquire into them.  Nadeau argues that his case should be remanded back to the ALJ to resolve the self-created discrepancies between Nadeau's various factual allegations.  For the reasons I explain below, this argument has no merit.

As the plaintiff, Nadeau bears the burden of establishing that his impairments prevented him from returning to his past relevant work ("PRW").  See Ortiz, 890 F.2d at 524.  Accordingly, he bears the burden of producing facts sufficient to show that his past work responsibilities were not SGA or, alternatively, that his subsequent impairments prevented him from carrying out those duties.  See Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 5 (1st Cir. 1991) ("the claimant has the burden of making some reasonable threshold showing that she cannot return to her former employment because of her alleged disability"); see also Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991).  Based on the employment descriptions Nadeau produced to the ALJ, however, the employment specialist position provided Nadeau with enough earnings to qualify as SGA.  It may well be that *neither*

of the forms Nadeau provided is correct.  If this is so, however, then it was Nadeau's responsibility to provide an accurate characterization of his past work to the ALJ.  See Santiago, 944 F.2d at 5.  Despite being represented by counsel, Nadeau did nothing to call the ALJ's attention to this issue.  Cf. May v. Bowen, 663 F. Supp. 388, 393 (D. Me. 1987) (granting remand where claimant raised the issue of whether she could perform her PRW, but the ALJ nevertheless failed to make specific findings regarding the physical and mental demands of her PRW).  Accordingly, there is no reason to let Nadeau benefit from the combination of his self-created inconsistency and his self-induced failure to address the issue at the appropriate time by now ordering a remand.

 Nadeau also argues that the facts were insufficient because the ALJ never determined whether the employment specialist position was an unsuccessful work attempt ("UWA") that should not be counted as SGA.  See 20 CFR 404.15749(a)(1); SSR 05-02; SSR 84-25.  This argument has no merit.  The UWA concept is an equitable means of ensuring that impaired workers who attempt to engage in SGA, but are forced to stop because of their impairments, are not penalized for making such attempts.  See SSR

05-02.  Nadeau has nowhere alleged that his employment specialist position was cut short by his impairment; indeed, his impairment did not begin until October 2, 2001, long after he stopped working as an employment specialist.  Nadeau has offered no reason to justify expanding the UWA concept to brief periods of work that *precede* the onset of the impairment, and the facts of this case provide no equitable reason to do so.

## IV.  CONCLUSION

For the foregoing reasons, Nadeau's motion to reverse (Doc. No. 8) is denied, and the Commissioner's motion to affirm (Doc. No. 9) is granted.  The clerk is directed to enter judgment accordingly.

SO ORDERED.

                                          /s/Paul Barbadoro
                                          Paul Barbadoro
                                          United States District Judge

April 2, 2008

cc:  Francis M. Jackson, Esq.
     Karen B. Fitzmaurice, Esq.
     T. David Plourde, Esq.